UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROOSEVELT WATTS,

                 Petitioner,              Case No. 1:16-cv-12997
                                                          Hon. Thomas L. Ludington

BONITA HOFFNER,

                 Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Roosevelt Watts, ("Petitioner"), a Michigan Department of Corrections prisoner serving a life sentence, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges his Wayne Circuit Court jury trial conviction of one count of first-degree murder, MICH. COMP. LAWS § 750.316, and one count of possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. For the reasons stated below, the petition for a writ of habeas corpus will be denied. Petitioner will also be denied a certificate of appealability permission to appeal in forma pauperis.

**I.**

This Court will recite verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the shooting death of a 15-year-old victim who at the time of the shooting was selling crack cocaine from a house where the defendant had been smoking crack. The victim died of a gunshot wound to the right lower chest. The three inhabitants of the house, two of whom also had also [sic] been

smoking crack, testified that they did not see the shooter but that defendant was the only other person present in the home. Defendant was arrested hours after the shooting and gave a statement that he was leaving the house when a masked man entered and shot the victim. Defendant stated that he was close to the shooter when the gun was discharged. Defendant tested positive for gunshot residue on his face and hand, and when he was arrested, a package of crack cocaine was found in the back seat of the car where he had been a passenger. Defendant stipulated that he had a felony conviction for purposes of the felon-in-possession charge. Defendant testified consistently with his statement to police.

* * *

Tracy Turner, who was present in the home when the victim was shot, testified that after she heard the gunshot, a man wearing a blue coat like defendant's coat lifted the victim from the doorway of her bedroom. Turner recognized defendant's voice telling her to keep her head down. Defendant had gunshot residue on his face and hands. . . . Furthermore, the police found defendant near crack cocaine and with money in his pocket; the victim was found without crack cocaine or money.

*People v. Watts (After Remand)*, No. 272369, 2009 WL 3321511, at *1, 5 (Mich. Ct. App. Oct. 15, 2009) (quoting *People v Watts*, No. 272369, 2008 WL 782588, at *1 (Mich. Ct. App. Mar. 25, 2008) (vacated on other grounds 755 N.W.2d 980 (Mich. 2008))).

Following his conviction and sentence, Petitioner filed an appeal of right with the Michigan Court of Appeals. The Michigan Court of Appeals issued an unpublished opinion reversing his convictions. *Watts*, 2008 WL 782588. The prosecutor appealed to the Michigan Supreme Court, which vacated the Michigan Court of Appeals' decision and remanded the case for further proceedings. *People v. Watts*, 755 N.W.2d 188 (Mich. 2008) (table).

The Michigan Court of Appeals then issued an unpublished opinion affirming Petitioner's convictions. *Watts*, 2009 WL 3321511. Petitioner sought leave to appeal before the Michigan Supreme Court, but the application was denied. *People v. Watts*, 777 N.W.2d 420 (Mich. 2010) (table).

On April 16, 2010, Petitioner filed his first petition for habeas corpus with this Court. *Watts v. Howes*, Case No. 10-cv-11548. On February 7, 2011, Petitioner moved to hold the petition in abeyance so he could present new claims to the state courts. The Court denied the motion, noting that abeyance was not warranted because the petition was filed before the statute of limitations began running. ECF No. 13, at 2. Watts then moved to dismiss the petition without prejudice, and the Court granted the motion. ECF No. 15.

On June 30, 2011, Watts filed a motion for relief from judgment in the state trial court. The trial court denied the motion on October 14, 2011. Watts filed a delayed application for leave to appeal in the Michigan Court of Appeals which was denied under Michigan Court Rule 6.508(D). *People v. Watts*, No. 314132 (Mich. Ct. App. Sept. 13, 2013). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but the application was denied with citation to the same court rule. *People v. Watts*, 880 N.W.2d 573 (Mich. 2016) (table).

On August 16, 2016, Watts filed his second federal petition for habeas corpus. *Watts v. Hoffner*, Case No. 16-cv-12997, ECF No. 1. On February 24, 2017, Respondent filed a motion to dismiss the federal petition for failure to comply with the statute of limitations. ECF No. 5. The motion was denied, and the Court ordered Respondent to file an answer to the petition. ECF No. 8. The petition has now been fully briefed.

## II.

Title 28 of the United States Code, section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). "[W]hether the trial judge was right or wrong

is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

### III.

### A.

The respondent contends that several of the petitioner's claims are procedurally defaulted because the errors were not preserved at trial or on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, it will be more efficient to proceed directly to the merits, especially because Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims and because he asserts that new evidence demonstrating his actual innocence excuses his defaults.

### B.

Watts first claims that insufficient evidence was presented at trial to demonstrate his identity as the perpetrator of the offense. He asserts that the only evidence connecting him to the crime was the testimony of a few witnesses of suspect credibility. This claim was presented to, and ultimately rejected by, the Michigan Court of Appeals after remand by the Michigan Supreme Court.

Petitioner acknowledges that Larry Lundy testified that he saw the petitioner holding a gun, heard the victim say to the petitioner "why do you want to do me like this?", and then heard a shot. ECF No. 1 at 17. He also acknowledges that Tiffani Nix testified that she heard the victim say "I know you not going to do this to me" before hearing a shot fired. *Id.* at 17–18. And finally, he acknowledges that Tracy Turner testified that she heard a shot, saw the victim fall into her room, Petitioner then told her to keep her head down or he would blow her head off, and she then saw someone drag Watts down the hall after which she heard a second shot. *Id.* at 18.

Watts argues that each of these witnesses' testimony is suspect. He claims that Lundy saw the gun in the Petitioner's right hand, but gunshot residue was found on Watts's left hand. *Id.* He argues that Nix testified that she did not see anything because she was hiding in her room. *Id.* And finally, Petitioner asserts that Turner admitted that she did not actually see the shooting or see who dragged him down the hallway. *Id.*

In reviewing sufficiency-of-the-evidence claims under the AEDPA, the Court accords the state court's judgment a double layer of deference. *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). The first question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 205 (citing *Jackson*, 443 U.S. at 319). Second, even if a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it must defer to the state

court's sufficiency determination as long as it is not unreasonable. *Id.* (citing 28 U.S.C. § 2254(d)(2)).

Here, contrary to the petitioner's allegations, *see* ECF No. 1 at 17, the Michigan Court of Appeals adjudicated this claim on the merits after the case was remanded to it from the Michigan Supreme Court:

> Defendant claims there was insufficient evidence to support his conviction. This Court reviews claims of insufficient evidence de novo. *People v. Cline*, 276 Mich. App. 634, 642 (2007). This Court reviews a challenge to the sufficiency of the evidence by viewing the evidence in a light most favorable to the prosecution, and determining whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*
>
> The only element of the crimes that defendant challenges is his identity as the shooter. Identity is always an essential element of any crime. *People v. Oliphant*, 399 Mich. 472, 489 (1976). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence that defendant shot the victim. Witness testimony can provide sufficient evidence to justify a conviction. See *People v. Malone*, 193 Mich. App. 366, 372 (1992), aff'd 445 Mich. 369 (1994). In this case, defendant admitted he was present at the time of the shooting. Tracy Turner, who was present in the home when the victim was shot, testified that after she heard the gunshot, a man wearing a blue coat like defendant's coat lifted the victim from the doorway of her bedroom. Turner recognized defendant's voice telling her to keep her head down. Defendant had gunshot residue on his face and hands. Therefore, physical evidence also permits the inference that defendant was the shooter. Furthermore, the police found defendant near crack cocaine and with money in his pocket; the victim was found without crack cocaine or money. Viewing all permissible inferences from the evidence in the light most favorable to the prosecution, the evidence was sufficient to establish beyond a reasonable doubt defendant's identity as the shooter.
>
> Defendant argues that the testimony of the prosecution witnesses who identified defendant as the shooter was incredible. "Questions of credibility are left to the trier of fact and will not be resolved anew by this Court." *People v. Avant*, 235 Mich. App. 499, 506 (1999). Defendant's argument in this regard is without merit.

*Watts*, 2009 WL 3321511, at *5–6.

The standard of review here is quite deferential. The Michigan Court of Appeals did not unreasonably apply the *Jackson* standard when it rejected the petitioner's claim. While no witnesses testified to directly seeing Petitioner shoot the victim, their testimony came very close to meeting that mark. Circumstantial evidence and inferences drawn from that evidence alone may be sufficient to sustain a conviction. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). Here, the three eyewitnesses were in the house when the victim was shot. They saw Petitioner with a gun. They heard the victim make statements that could be construed as someone pleading for his life. They heard shots and saw Watts leave the scene immediately after the shooting. The police then found Petitioner with cocaine and cash, and gunshot residue was found on his face and left hand. A rationale fact-finder could easily connect these dots and determine beyond a reasonable doubt that Petitioner was the shooter.

Petitioner presents an alternative theory that accounts for all of this evidence. He asserts that a third man happened to enter the house and shoot the victim as he passed Watts (who was on his way out). According to Petitioner, this sequence explains the gunshot residue and renders him the "the unluckiest man in the World." The fact that the defense theory fits the evidence does not render the evidence constitutionally insufficient to support the guilty verdict. In fact, "it is well settled that when a defendant 'offer[s] an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve [it].'" *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007) (quoting *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir. 2003)). And it was reasonable for the jury to disregard Petitioner's third-party shooter theory.

Because this claim was reasonably rejected by the Michigan Court of Appeals, the petitioner has failed to demonstrate entitlement to habeas relief under § 2254(d).

**C.**

In his second claim, Petitioner asserts that the prosecutor committed misconduct by presenting false evidence at trial. Specifically, he argues that William Steiner, a forensic technician, testified that gunshot residue was found on Watts's left hand, forehead, and face, but not on his right hand. He asserts that this testimony was contrary to the testimony of Lundy, who testified that he saw the shooter holding the gun in his right hand before the shooting. ECF No. 1 at 22. Petitioner asserts that the prosecutor was prohibited from offering the inconsistent testimony of both of these witnesses, reasoning that one of the two must have been fabricated. *Id.* at 22–24.

In ruling that the claim was barred on state collateral review, the trial court considered and rejected this argument while discussing the petitioner's ineffective assistance of counsel claim. The trial court found:

> Defendant avers that the prosecutor knowingly presented false testimony of an eye witness and tainted evidence at trial. . . . Contrary to Defendant's theory of defense, the latter portion of Steiner's quoted trial testimony is consistent with eyewitness testimony, and reads as follows:
>
>> I don't usually draw any kind of conclusion regarding where I find the gunshot residue because as I said, it's not sticky you can loose [sic] it easily. A person may shoot a weapon with their right hand and have a lot of residue deposited on their right hand and then they are active and doing things with their right hand touching things, picking up things and handling things. All that activity will tend to [disperse] the residue. So it's *entirely possible that you can shoot a gun with your right hand but by the time [a sample is taken], the residue is gone from your right hand.* [emphasis added by trial court].
>
> Defendant concedes that this testimony was elicited on cross-examination by defense counsel. Moreover, the eyewitnesses who testified at trial stated that Defendant fired a gun with his right hand. Although the record indicates Steniner's expert testimony was consistent with that of other witnesses, they jury was free to resolve any inconsistent testimony as matter of credibility.

ECF No. 6, Ex. 15 at 3–4.

To be entitled to habeas relief on a prosecutorial misconduct claim, Petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). Likewise, due process is denied when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). A habeas petitioner must show that a witness's statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517–18 (6th Cir. 2000).

Here, the petitioner has failed to show that the prosecutor knew or should have shown that Steiner or Lundy's testimony was false. As explained by the trial court, the testimony of the two witnesses was not inconsistent. Lundy thought he saw Petitioner holding the gun in his right hand, and Watts admits in his petition that he is right-handed. ECF No. 1 at 22. Steiner explained that it is entirely possible for gunshot residue to wipe off a hand by the time a sample is taken. And while Petitioner refers to problems within the Detroit Police Crime Lab in general at the time of the investigation, he makes no showing that Steiner committed any errors in his case.[1] In fact, the

---

[1] The Detroit Police Department Crime Lab Firearms Unit was suspended from analyzing any firearms evidence in April 2008, after it was discovered that the crime lab was producing results that were potentially unreliable. *People v.*

petitioner does not dispute the fact that gunshot residue was found on his left hand and face. He explains that the residue likely got there when he passed by the shooter on his way out of the house as the victim was shot. Watts's only claim is that if he was the shooter, then gunshot residue should have been found on his right hand—a proposition rejected by Steiner. Accordingly, Watts has failed to demonstrate that the prosecutor knowingly presented false testimony at trial. The claim is without merit.

**D.**

Watts next asserts that his appellate counsel was ineffective for failing to raise the claims that he asserts in this action but which were not presented to the state courts during his direct appeal. ECF No. 1. at 29. Specifically, he argues that appellate counsel was ineffective for failing to raise his claims of ineffective assistance of trial counsel and prosecutorial misconduct. *Id.* at 30.

Claims of ineffective assistance of appellate counsel are governed by the same standard as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on his claim, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires demonstrating (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability he would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 687–91, 694).

---

*Williams*, 2011 Mich. App. LEXIS 2131 (Mich. Ct. App. Dec. 1, 2011). Petitioner was tried in 2006, before the Firearms Unit was suspended. The prosecutor's office and the Michigan State Police reviewed the evidence in Petitioner's case sometime in 2011, and they determined that no further action was necessary. ECF No. 6, Ex. 16, Attachment A, at 14–16.

For the reasons given elsewhere in this opinion, Watts's underlying claims about the prosecutor and trial counsel are meritless. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit," *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), and because there is not a reasonable probability that the petitioner would have prevailed on appeal if his appellate attorney had raised these claims, Petitioner has failed to show that he was prejudiced by his attorney's performance.

**E.**

Watts next asserts that there is newly discovered evidence proving that he is actually innocent. Specifically, Petitioner cites to a 2009 report from the Michigan State Police indicating that the Detroit Forensic Crime Lab "yielded faulty reports." ECF No. 1 at 34. He asserts that if his hand had been "properly analyzed by the expert, it would have shown that the gunshot residue on [his] left hand resulted from him being in close proximity of the actual shooter. This would have been consistent with [his] statement that a masked gunman entered the house as he was leaving, and shot [the victim]." *Id.* at 35.

This sort of free-standing claim of actual innocence does not state a cognizable basis for granting habeas relief. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id*. *See also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error

at trial. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases). As discussed above, Petitioner has not shown an underlying constitutional violation related to Steiner's determination and testimony that gunshot residue was found on his left hand and that if there was residue on his right hand it might have rubbed off before testing. Furthermore, Watts has not provided a reason to believe that another expert would testify that the gunshot residue found on Watts was more consistent with someone else being the shooter. Petitioner is therefore not entitled to relief on this claim.

## F.

Petitioner's final claim asserts that he was denied the effective assistance of trial counsel. He claims that his attorney should have called an independent expert witness regarding the gunshot residue. ECF No. 1 at 40–41. He also faults counsel for failing to call "Tosha" and "Seven," who he claims had been smoking crack cocaine with him before and after the shooting. *Id.* Watts claims they would have testified that he had his own money to purchase cocaine, and therefore that Watts had no reason to rob and murder the victim. *Id.* at 43.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The chief problem with Petitioner's claim is that he has not proffered any evidence at all—either here or to the state courts—that he had witnesses who would have testified in his favor. He has not supplied statements or affidavits from "Tosha" or "Seven." And he has failed to proffer a report or a statement or any evidence at all regarding his theory about the gunshot residue. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 134 S. Ct. at 17 (2013) (quoting *Strickland*, 466 U.S. at 689).

Furthermore, Petitioner's failure to support his claim with any evidence either before the state courts or here prevents him from showing that the alleged deficiency in his counsel's conduct resulted in prejudice. Without any indication of what "Tosha" or "Seven" would have testified to, or whether another expert witness would have adopted the petitioner's theory as to the gunshot residue, there is no basis to conclude that there is a reasonable probability that the result of the trial would have been different. "Pure speculation" about whether the outcome might have been different is insufficient to establish prejudice. See *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir.2004). Petitioner's final claim is therefore without merit.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not be issued. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability. The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

Dated: March 12, 2018                          s/Thomas L. Ludington
                                                                     THOMAS L. LUDINGTON
                                                                     United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 12, 2018.

                                          s/Kelly Winslow
                                          KELLY WINSLOW, Case Manager